JOAN PAYNE, d/b/a Cross Country Ski Shop, Plaintiff-Appellant, v. MILL RACE INN *et al.*, Defendants-Appellees.

Second District No. 2—85—1063

Opinion filed February 5, 1987.

270

Leonard J. Solfa, Jr., of Batavia, for appellant.

Robert F. Casey, of Casey, Krippner & Callahan, of Geneva, and Gerald M. Sheridan, Jr., of Wheaton, for appellees.

JUSTICE HOPF delivered the opinion of the court:

Plaintiff, Joan Payne, d/b/a Cross Country Ski Shop, appeals from the order of the circuit court which dismissed her breach of contract action against defendants, Mill Race Inn and John Mitchell, for failure to state a cause of action pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615). For the reasons set forth below we reverse.

On June 20, 1984, the plaintiff filed her original two-count complaint against Mill Race Inn (Mill Race) and John Mitchell. In count I she alleged that the defendants breached an agreement to purchase her business. Count II characterized certain conduct of the defendants as wilful and wanton and sought exemplary damages. On May 29, 1985, the trial court dismissed the complaint under section 2—615 for failure to state a cause of action.

On June 28, 1985, the plaintiff filed a six-count amended complaint. In count I, for breach of contract, the plaintiff alleged the following facts. She operated a sole proprietorship known as the Cross Country Ski Shop in Aurora, Illinois. The defendant, Mill Race Inn, a corporation, operated in Geneva, Illinois, with the defendant, John Mitchell, acting as managing agent of Mill Race and the Mill Race Cyclery Shop, also in Geneva. On April 2, 1984, Mitchell and the plaintiff initiated negotiations and subsequently reached an agreement which resulted in the defendants' offer to purchase the plaintiff's business. On April 12, 1984, the parties entered into a contract for defendants' purchase of the business. Plaintiff attached a document to the complaint, referred to as exhibit A, which assertedly did two things: (1) set forth the terms of defendants' offer, and (2) constituted the contract between plaintiff and defendants. Exhibit A was titled "Plan for Development of Cross Country Ski Shop at Mill Race Inn"

(plan for development).

Count I further alleged that, pursuant to the contract, the plaintiff terminated her existing business lease and advertising and relocated some of her inventory to storage facilities arranged for by the defendants. The defendant, Mill Race, paid for storage for other of the plaintiff's inventory on other premises. The inventory relocation was done under the direction and control of defendants. On May 16, 1984, the defendants breached the contract when they refused to allow the plaintiff access to a previously agreed-upon location under the defendants' control. Since that date the defendants have refused to comply with the terms of the contract. Because of the defendants' breach, the plaintiff again relocated, reinstated advertising, procured new inventory, and advised suppliers of her change in location. These actions resulted in a loss of business as well as customer goodwill.

Plaintiff based counts II through VI of her amended complaint on detrimental reliance, part performance, promissory estoppel, fraud, and wrongful interference with the plaintiff's business. The plaintiff also attached to the complaint, as exhibit B, a copy of an advertising proof for telephone advertising for the new Mill Race business.

On November 27, the court heard oral argument on the defendants' motion to dismiss. Defendants contended that: (1) exhibit A, the plan for development, was not a contract which would impose liability on these defendants; (2) even if considered a contract, the plan for development failed to comply with the statute of frauds; (3) detrimental reliance, part performance and promissory estoppel are not causes of action; and (4) the count entitled fraud failed to contain a specific misrepresentation of material fact.

In response, plaintiff asserted that it is a question of fact as to whether the plan for development is a contract. She further urged that the parties' agreement should be discerned not only from the document itself but also from the plaintiff's activities extrinsic to the contract. The court entered an order which found that none of the counts stated a cause of action. The trial judge then dismissed plaintiff's amended complaint pursuant to section 2—615 and terminated the litigation pursuant to section 2—615(d). Ill. Rev. Stat. 1985, ch. 110, par. 2—615(d).

On appeal, plaintiff again contends that whether the plan for development is merely a plan, or rather, a binding legal contract, is a question of fact, incapable of resolution on a section 2—615 motion. Plaintiff insists that the trial court erred when it concluded that the plan for development was not a contract. The source of the error, ac-

cording to plaintiff, was the court's failure to consider the significance of the actions of the parties subsequent to the time when the agreement was reached. While the basis for the trial court's dismissal of plaintiff's breach of contract action is not clear from the court's order, we agree with plaintiff's ultimate conclusion that it was error to dismiss her complaint and terminate the litigation.

 Section 2—615 of the Code of Civil Procedure provides for a motion to dismiss a complaint for failure to state a cause of action. (Ill. Rev. Stat. 1985, ch. 110, par. 2—615.) Appeal from dismissal of a complaint for such failure preserves for review only the question of the legal sufficiency of the complaint. (*Henkhaus v. Barton* (1977), 56 Ill. App. 3d 767, 769, 371 N.E.2d 1166.) For purposes of a motion to dismiss, all well-pleaded facts must be taken as true, as well as all reasonable inferences favorable to the nonmoving party which may be drawn from the facts. (*Morrow v. L. A. Goldschmidt Associates, Inc.* (1984), 126 Ill. App. 3d 1089, 1096, 468 N.E.2d 414, *rev'd on other grounds* (1986), 112 Ill. 2d 87, 492 N.E.2d 181.) A motion to dismiss, however, does not admit conclusions of law or conclusions of fact which are not supported by allegations of specific facts which form the basis for such conclusions. (*Mid-Town Petroleum, Inc. v. Dine* (1979), 72 Ill. App. 3d 296, 302, 390 N.E.2d 428.) In determining whether a complaint states facts or conclusions, the complaint must be considered in its entirety and not in its disconnected parts. (*Denkewalter v. Wolberg* (1980), 82 Ill. App. 3d 569, 572, 402 N.E.2d 885.) In ruling on a motion to dismiss, allegations of the complaint are to be interpreted in the light most favorable to the plaintiff. (82 Ill. App. 3d 569, 572, 402 N.E.2d 885.) These principles guide our inquiry into the sufficiency of plaintiff's complaint.

 An adequate complaint based upon breach of contract must allege the existence of a contract between plaintiff and defendant, performance by plaintiff of the conditions imposed on him by the contract, breach of the contract by defendant, and the existence of damages as a result of the breach. (*Martin-Trigona v. Bloomington Federal Savings & Loan Association* (1981), 101 Ill. App. 3d 943, 946, 428 N.E.2d 1028.) Plaintiff in this case has adequately alleged each of these elements.

 Allegations of the existence of a contract must contain facts indicating an offer, acceptance, and consideration. (*Martin-Trigona v. Bloomington Federal Savings & Loan Association* (1981), 101 Ill. App. 3d 943, 946, 428 N.E.2d 1028.) When considered in its entirety, plaintiff's complaint contains facts sufficient to indicate the existence of a contract.

Plaintiff alleged that she was the sole proprietor of the Cross Country Ski Shop located in Aurora; that defendant Mill Race was a corporation doing business in Geneva; that defendant Mitchell managed Mill Race Inn and Mill Race Cyclery Shop for defendant Mill Race; that Mitchell first offered and then contracted to purchase plaintiff's business. According to the complaint, the offer to purchase was preceded by negotiations, begun on or about April 2, 1984, which culminated in an agreement between plaintiff and Mitchell; the terms of the offer were set forth in an attached exhibit A; the contract was entered into on or about April 12, 1984, between Mill Race, Mitchell, and plaintiff; and a copy of the contract was attached to the complaint, also as exhibit A.

The complaint then alleged that plaintiff began to perform her contract obligations by terminating her existing lease and business advertising, and relocating her business inventory. Mill Race and Mitchell allegedly arranged for storage of some of the inventory on Mill Race premises and paid for storage of the rest at another location. Subsequently, according to the complaint, Mill Race breached the contract by denying plaintiff access to the agreed new business location on May 16, 1984.

Exhibit A, which plaintiff attached to her complaint, specifically refers to the purchase of plaintiff's business in two places; indicates that a new corporation was to be set up to operate the business, with both Mitchell and plaintiff named as officers; establishes that the financial status of the ski shop was to be independent from Mill Race Inn and Mill Race Cyclery, and that it would pay its own operational costs, including a proportionate share of rent, utilities, insurance, and "other related habitational expenses." The alleged contract also details the financing of the purchase of the business. The new corporation was to assume the existing indebtedness of plaintiff's business; plaintiff was to receive stock in the new corporation and share in its profits as payment toward the purchase; and Mill Race Inn and Mitchell were to subscribe to stock in the new corporation, as well as share in its profits. Plaintiff was also to work in the business at a yearly salary.

Defendants insist that exhibit A is nothing more than an unsigned but detailed and explicit plan for ownership and operation of a business and does not impose contract liability on anyone. Exhibit A, however, cannot be considered separate and apart from the rest of the complaint. Exhibits attached to a pleading constitute a part of the pleading for all purposes. (Ill. Rev. Stat. 1985, ch. 110, par. 2—606.) Furthermore, for our purpose here of determining whether the com-

plaint sets forth sufficient facts to state a cause of action, the complaint must be considered in its entirety. (*Denkewalter v. Wolberg* (1980), 82 Ill. App. 3d 569, 572, 402 N.E.2d 885.) Accordingly, we consider the complaint and the exhibits as a single entity.

■ While the complaint filed by plaintiff is not a model of the factual detail which should be included in a breach of contract pleading, neither is it so lacking in relevant factual allegations as to merit dismissal. The granting of a motion to dismiss for failure to state a cause of action should be affirmed on appeal only when no set of facts can be proved under the pleadings which will entitle plaintiff to relief. (*Griffis v. Board of Education* (1979), 72 Ill. App. 3d 784, 787, 391 N.E.2d 451.) We believe plaintiff could prove sufficient facts to show that she was entitled to relief for breach of contract under the complaint now before us.

The complaint alleged the agency of Mitchell, in that he was a manager for Mill Race and Mill Race Cyclery, and, thus, had authority to offer and contract for defendant Mill Race. It further alleged the date and fact of negotiations with Mitchell prior to an offer being made. The terms of the claimed offer, and the subsequent contract, were set forth in exhibit A. Those terms called for the formation of a new corporation which would purchase plaintiff's business and spelled out in detail the consideration plaintiff would receive for that purchase. It is fair to infer from the language of the exhibit that plaintiff promised to physically relocate her business. Other terms of the asserted contract indicated that Mill Race and Mitchell were to receive consideration in the form of the new location of the business, plaintiff's expertise in operating the business, and their share in the profits of the business. The terms set out in exhibit A also delineated what was to be the status of the new business in relation to the existing Mill Race enterprises. Finally, the complaint alleged that plaintiff began to perform by winding up the details of her existing business and moving to locations designated by defendant Mill Race. We find that these allegations, if proved, would adequately show the offer, acceptance, and consideration which indicate the existence of a contract.

The complaint alleged breach of the contract by the assertion that, on a date certain, defendants refused to grant plaintiff access to the agreed upon business location, which was under defendants' control. Plaintiff alleged that she incurred damages as a result of defendant's breach in that she once again had to relocate and reestablish her business, and suffered the loss of business and customer goodwill in the process. We conclude that the complaint, together with exhibit A, alleged facts which state a legally sufficient cause of action for breach

of contract. The defendants' motion to dismiss count I of the complaint should not have been granted.

Two of defendants' other contentions are that: (1) plaintiff waived the question of whether counts III through VI of the amended complaint state causes of action by failing to argue those points in her appellate brief; and (2) count II does not state a cause of action. We acknowledge that on appeal plaintiff did not argue detrimental reliance (count II), part performance (count III), and promissory estoppel (count IV) as separate and distinct causes of action. Nevertheless, we think all three of these legal principles were sufficiently raised within plaintiff's breach of contract argument to allow them to be considered here. Plaintiff clearly and steadfastly maintains that she began to perform her contractual obligations by winding up her existing business and taking the steps necessary to relocate. She also claims to have taken such steps in reliance on defendants' promises and conduct, and to have suffered specific detriment as a result. Plaintiff urges that these facts support her assertion of a contract between herself and defendant. Considered in its entirety, plaintiff's argument incorporates the points challenged by defendants. Thus, although we do not consider here whether plaintiff's counts II, III, and IV stated separate causes of action, we will review the applicability of the legal principles asserted in those counts as they are espoused in plaintiff's appellate breach of contract argument.

The primary thrust of defendants' motion to dismiss, in terms of plaintiff's breach of contract action, was to deny the existence of the contract. As shown above, we find that plaintiff adequately alleged that a contract did exist. Even if we had been unable to find such an allegation, however, we think plaintiff has sufficiently pleaded estoppel to maintain her cause of action for breach. Although plaintiff set forth "detrimental reliance" and "promissory estoppel" as separate counts in her complaint, we believe the two concepts merge into plaintiff's overall estoppel argument and effectively preclude defendants from denying that a contract exists.

■ We recognize at the outset that estoppel is argued here by plaintiff. Although equitable estoppel is usually asserted as an affirmative defense to a suit brought by another party, there is no difference in application of the doctrine in the context of a plaintiff's action in which plaintiff raises estoppel in his pleadings and assumes the burden of proving it. *Haeflinger v. City of Wood Dale* (1984), 129 Ill. App. 3d 674, 677, 472 N.E.2d 1228.

■■ Equitable estoppel is a doctrine that is invoked to prevent fraud and injustice; the test is whether, considering all the circum-

stances of the specific case, conscience and honest dealing require that a party be estopped. (*Carey v. City of Rockford* (1985), 134 Ill. App. 3d 217, 218, 480 N.E.2d 164.) Estoppel arises whenever a party, by his word or conduct, reasonably induces another to rely on his representations and leads another, as a result of that reliance, to change his position to his injury. *Gary-Wheaton Bank v. Meyer* (1984), 130 Ill. App. 3d 87, 95-96, 473 N.E.2d 548; *Wilson v. Illinois Benedictine College* (1983), 112 Ill. App. 3d 932, 939, 445 N.E.2d 901.

■■ The instant complaint alleged that defendants promised to purchase plaintiff's business on the terms set forth in exhibit A, and that, in reliance on those promises, plaintiff ceased doing business at her existing location. She assertedly cancelled her existing business lease and business advertising; permitted her inventory to be moved and stored; and arranged for new telephone advertising for the relocated business. She attached exhibit B, which is a telephone advertising proof sheet of an ad for Cross Country Ski Shop At Mill Race Inn located at a Geneva address. Plaintiff also alleged that defendants directed and controlled the removal of her inventory and that Mill Race not only arranged for storage of part of the inventory on its own premises but also paid for additional storage space. Finally, plaintiff alleged that as a result of her reliance on the promises and conduct described above, she lost her prior business location, as well as the customer goodwill her business had built up, and had to once again relocate and reestablish the business on her own.

In our opinion, proof of the facts alleged would adequately show that plaintiff reasonably relied on defendants' promises, as well as defendants' conduct after the promise but before breach, as a basis for taking steps toward the relocation of her business. Such proof would also reflect the detriment plaintiff suffered as a consequence of her reliance. Accordingly, the complaint adequately alleged an estoppel against defendants' denial that a contract exists between plaintiff and themselves.

Since plaintiff did not raise on appeal the issues of fraud (count V of complaint) or wrongful interference with her business (count VI of complaint), those questions are waived pursuant to Supreme Court Rule 341(e)(7) (87 Ill. 2d R. 341(e)(7)).

■■ As a final matter, defendants assert that plaintiff's action is barred by the Statute of Frauds (Ill. Rev. Stat. 1983, ch. 59, par. 1). This defense does not attack the sufficiency of the pleadings and is not properly raised in a section 2—615 motion. Even if it had been properly raised, however, the Statue of Frauds is not available as a defense where there has been sufficient performance by one of the

contracting parties in reliance on the agreement. (*Anastaplo v. Radford* (1958), 14 Ill. 2d 526, 537-38, 153 N.E.2d 37.) While this performance doctrine was first developed in the context of land sales contracts (14 Ill. 2d 526, 153 N.E.2d 37), it has been extended to agreements to answer for the debt of another. *Thilman & Co. v. Esposito* (1980), 87 Ill. App. 3d 289, 408 N.E.2d 1014; *Yorkville National Bank v. Schaefer* (1979), 71 Ill. App. 3d 137, 388 N.E.2d 1312; *Grundy County National Bank v. Westfall* (1973), 13 Ill. App. 3d 839, 301 N.E.2d 28.

The part-performance doctrine was held inapplicable by this court in *Mapes v. Kalva Corp.* (1979), 68 Ill. App. 3d 362, 386 N.E.2d 148, which involved a suit for breach of an employment contract not to be performed within one year. The court noted that part performance will avoid application of the Statute of Frauds only when the performance is such that it is impossible or impractical to return the performing party to the preperformance status quo, or to compensate him for what he has parted with, or for the value of his performance. In such a case, allowing the defendant to deny the bargain would be a virtual fraud upon the performing party. The employment contract in *Mapes* did not involve this kind of performance. Moreover, according to the court, to allow performance, in the form of employment, to act as a bar would render the relevant provision of the Statute of Frauds meaningless since any contract where the employee had begun work and received a paycheck would be protected from the application of the statute.

The facts of the case now before us are very different from the facts of *Mapes*. Plaintiff here alleges that she gave up her business location, terminated all aspects of the business relevant to that location, and allowed the physical removal of her inventory. As a result, she claims to have lost business and customer good will. Assuming the truth of these asserted injuries, plaintiff could be restored to the preperformance status quo only if her previous business location, or something in the immediate area, was available. Even then, she would be required to expend significant time, money, and energy reestablishing the business and winning back customers. It could well be impractical, if not impossible, to recapture the status quo. Plaintiff's allegations are sufficient to show that the detriment she has suffered by beginning to perform her contractual obligations is such that to bar the instant action would be a virtual fraud upon her. As stated in *Culbertson v. Carruthers* (1978), 66 Ill. App. 3d 47, 52, 383 N.E.2d 618:

"Part performance which will take a parol contract out of the

statute of fraud is rooted in the equitable concept of reliance. When one party to an oral contract has so far performed his part of the agreement that to allow the other party to invoke the statute of frauds would perpetrate a fraud upon him, chancery will intervene to enforce the contract."

We see no reason why the part-performance doctrine should not be applied to plaintiff's performance in this case.

In accord with the views expressed above, the order dismissing count I of plaintiff's complaint is reversed. The dismissal of counts II through VI is affirmed, with the understanding that the issues raised in counts II, III, and IV were found to be incorporated in count I. This cause is remanded for further proceedings in accordance with this opinion.

Affirmed in part, reversed in part, and remanded.

NASH and REINHARD, JJ., concur.