THILMAN & COMPANY, Plaintiff-Appellee, *v.* ANGELO ESPOSITO *et al.*,
Defendants-Appellants.

First District (1st Division)    No. 79-631

Opinion filed July 28, 1980.

Angelo Ruggiero, of Chicago (Michael R. Esposito, of counsel), for appellants.

Panter, Nelson & Bernfield, Ltd., of Chicago, for appellee.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff Thilman & Company (Thilman) brought an action against defendants Angelo Esposito (Esposito), Pioneer Development Corporation (Pioneer) and Oak Brook Bank, alleging that defendants were liable to plaintiff for insurance premiums due from the owners and operators of a business known as Ireland's Oyster House (Ireland's). In a bench trial, the court entered judgment for plaintiff and against Esposito and Pioneer in the amount of $10,049, plus costs, and against Oak Brook Bank in the amount of $1,201, plus costs. Only defendants Esposito and Pioneer appeal.

Defendants contend that (1) the trial court abused its discretion when it denied defendants' motion for retrial instead of granting a continuance; (2) the trial court erred in rendering a judgment against defendant Pioneer without first resolving the issue of the court's jurisdiction over Pioneer and without allowing Pioneer to answer the complaint and defend itself; (3) the trial court erred in finding liability against both a corporate principal and its agent based on the same set of circumstances; and (4) plaintiff failed to prove the allegations made in its complaint.

On September 20, 1976, Thilman filed a complaint against Esposito, Pioneer and Oak Brook Bank, alleging that defendants were liable to plaintiff for insurance premiums due from the owners and operators of Ireland's. Summonses were returned indicating that Pioneer had been served on September 27, 1976, by leaving a copy of the complaint and summons with William Lewis, an employee at Ireland's, but that Esposito could not be found. The trial court granted defendants' motion to quash

service of summons. Alias summonses were issued for both Esposito and Pioneer. Summons for Pioneer was returned not found. Return of Esposito's summons showed personal service on March 16, 1977. On April 15, 1977, Esposito filed a motion to quash service of summons. On that same date, plaintiff Thilman filed a motion requesting Esposito be found in default and judgment rendered against him. The trial court entered an order finding that Esposito had generally appeared and gave Esposito 14 days in which to file an answer.

Esposito filed his answer on June 17, 1977, denying liability for any insurance premiums written by plaintiff for Ireland's and stating that the complaint was defective in that Esposito and Pioneer could not both be liable on the same allegation. A second alias summons for Pioneer was returned Pioneer not found. On August 31, 1977, the cause was continued by plaintiff to October 20, 1977, and on that date to February 1, 1978, and marked "FINAL." On February 1, 1978, neither Esposito nor Pioneer appeared and the court entered a default order against Esposito only and in favor of plaintiff.

On March 1, 1978, the court, on motion filed by both defendants, vacated the default order against Esposito and set the cause for trial on May 16, 1978. By agreement of the parties, the case was continued to September 14, 1978, on which date it was tried.

The report of proceedings shows that in plaintiff's attorney's opening statement he declared that judgment would be requested against both Esposito and Pioneer. At that time defendant's attorney objected to the jurisdiction of the court over Pioneer. The court instructed that memoranda be filed in support of each party's position on the jurisdictional question raised. Without any orders being entered as to the jurisdictional question, the case was tried. Thilman later submitted a memorandum on the jurisdictional question. However, Pioneer never complied with the court's instruction.

Edward Thilman, Jr., was the sole witness at the trial. He testified that he had been associated with plaintiff for 13 years as an insurance broker. Prior to May 1, 1975, plaintiff wrote insurance policies for Clem and Agnes Ireland for their building at 500 North LaSalle Street in Chicago, Illinois, known as Ireland's. Mr. Thilman testified that at the request of Esposito a conference was held on August 7, 1975, at plaintiff's office. Edward Thilman, Sr., James Thilman, the witness and Esposito were present. Esposito said at this meeting that he had purchased the building and restaurant at 500 North LaSalle Street and wanted to discuss the outstanding debts due plaintiff and future insurance coverage for Ireland's. Esposito wanted Thilman to arrange for the payment of the old debts and on the amount owed currently he would make the payments. Esposito was told by Mr. Thilman that the insurance coverage would be

discontinued unless the old debts were paid and the future premiums kept current. The total owed was determined to be $11,664.

Esposito offered to pay $1,664 immediately and to repay the remaining $10,000 in equal monthly installments of $1,000, plus 8 percent interest beginning September 1, 1975, and to sign notes for the debt owed, so as to continue insurance coverage. Esposito requested that the insurance policies continue and be renewed and he agreed to pay these on a current basis. Plaintiff agreed to Esposito's offer and $1,664 was paid at the meeting. Plaintiff subsequently received payment of $1,000 in both September and October of 1975 in the form of checks drawn on the account of Pioneer.

Plaintiff continued insurance coverage after August 7, 1975, based upon the agreement made at the conference. Subsequently, all insurance coverage was terminated due to nonpayment of installments and current premiums.

Mr. Thilman testified that there was no agreement in writing and that promissory notes were prepared, but Esposito refused to sign them.

The trial was then continued to permit briefing of the jurisdictional question, with no date set for hearing on the issue. On September 20, 1978, by agreement, the cause was continued to October 5, 1978. On October 5, 1978, the court found it had jurisdiction over Pioneer and entered judgment in favor of plaintiff and against Esposito and Pioneer in the amount of $10,049.

On October 27, 1978, defendants' attorney filed a motion for rehearing. On November 6 the motion was entered and continued to November 13, 1978. On November 13, 1978, by agreement, the motion was continued to December 4, 1978. On December 4, 1978, an associate lawyer of defendants' attorney filed an affidavit, in which he stated that defendants' attorney had suffered a coronary deficiency on November 21, 1978, and had been admitted to the intensive care unit at Henrotin Hospital in Chicago, Illinois, where he was presently situated. He also stated that he was unfamiliar with the case and was appearing as a courtesy to defendants' attorney in order to inform the court of his illness. It is unclear whether the court continued the matter to December 12, 1978; however, on December 12, defendants' attorney's associate again appeared and filed a petition requesting a continuance, accompanied by an affidavit by the associate which stated that defendants' attorney was under the care and treatment of a named physician. Objection was made by plaintiff to the failure of defendants to serve a notice of motion and to the continuance. The associate requested a continuance pending the recovery of defendants' attorney from the heart attack he suffered. The court continued the motion to January 19, 1979, with that date marked "FINAL" at the request of plaintiff's attorney. The entry made on the half

sheet memoranda on December 12, 1978, shows that the motion was continued to January 18, 1979.

On January 18, 1979, defendants were not represented in court by counsel. Instead, the court was advised by defendants' attorney's secretary that defendants' attorney was still recuperating, but that it was anticipated he would be back in his office the second week in February. At that time the court denied defendants' motion for rehearing. The order stated:

> "This matter coming on to be heard by continuance from a previous date upon the motion of the defendants with respect to the judgment of October 5, 1978 and said motion having been continued previously and this continuance having been marked 'FINAL' and the defendants having requested previous continuances and no attorney appearing now in open court for defendants and no petition, motion or affidavit having presented for a continuance and the court being advised in premises
> "It is hereby ordered that the motion of the defendants for rehearing, retrial, modification of judgment, vacating of judgment and various other relief with respect to the October 5, 1978 judgment is denied."

It is from this order that defendants appeal.

Defendants first contend that the trial court abused its discretion when it denied defendants' motion for rehearing instead of ordering a continuance. Plaintiff maintains that there was no abuse of discretion after the motion had been previously continued twice at defendants' request due to the alleged illness of defendants' counsel and no motion for continuance was before the court at the time the trial court denied defendants' motion for rehearing.

On January 18, 1979, the date set for hearing on defendants' motion for rehearing, although defendants' attorney's secretary informed the court that defendants' attorney was not yet recovered from his illness, no attorney appeared requesting a continuance.

■■ No duty is imposed upon a trial court to continue a case when no request for a continuance has been made. (*Francone v. Weigel Broadcasting Co.* (1979), 79 Ill. App. 3d 991, 398 N.E.2d 1114.) We find that the trial judge did not err in denying defendants' motion for rehearing instead of ordering a continuance.

■■■ However, even if a motion for a continuance had been made, the trial court would not have abused his discretion in denying the motion. A trial court has broad discretion in allowing or denying a motion for continuance (*Curtin v. Ogborn* (1979), 75 Ill. App. 3d 549, 394 N.E.2d 593; *Robinson v. Thompson* (1978), 58 Ill. App. 3d 269, 374 N.E.2d 242; *Kincl*

*v. Hycel, Inc.* (1977), 56 Ill. App. 3d 772, 372 N.E.2d 385; *Nixon v. Harris* (1975), 31 Ill. App. 3d 204, 333 N.E.2d 667) and the exercise of such discretion will not be disturbed on appeal unless there has been a manifest abuse of discretion. (*Curtin v. Ogborn; Robinson v. Thompson; Kincl v. Hycel, Inc.; Nixon v. Harris.*) A critical consideration in determining whether or not a continuance should be granted is whether the party seeking the continuance has acted with diligence. (*Bethany Reformed Church v. Hager* (1979), 68 Ill. App. 3d 509, 386 N.E.2d 514; *Curtin v. Ogborn; Nixon v. Harris; Duran v. Chicago & North Western Ry. Co.* (1975), 26 Ill. App. 3d 645, 325 N.E.2d 368; *Parker v. Newman* (1973), 10 Ill. App. 3d 1019, 295 N.E.2d 503.) Although absence of counsel is one factor to take into consideration in deciding a motion to continue, a party does not have an absolute right to a continuance solely because his counsel is absent. (*Thomas v. Thomas* (1974), 23 Ill. App. 3d 936, 321 N.E.2d 159; *Adcock v. Adcock* (1950), 339 Ill. App. 543, 91 N.E.2d 99.) Where a party does not show that an effort was made to obtain new counsel or that the issues are such as require handling by the attorney of record only, a denial of a motion for continuance requested because of counsel's absence is proper. (*Jarvis v. Shacklock* (1871), 60 Ill. 378; *Condon v. Brockway* (1895), 157 Ill. 90, 41 N.E. 634; *Johnson v. Theodoron* (1927), 324 Ill. 543, 155 N.E. 481.) Defendants' motion for rehearing was continued four times before the motion was denied, and two of those occasions were at the request of defendants. On January 18 defendants did not present to the court any motion to continue the matter and the court at that time denied defendants' motion for rehearing. Defendants did not seek to obtain new counsel to represent them after defendants' attorney suffered the coronary deficiency. Instead, defendants sought continuances hoping their attorney would recover and again actively represent them. We cannot say that defendants acted with due diligence, even if a motion for a continuance had been before the court. The trial court did not abuse its discretion in denying defendants' motion for rehearing instead of granting a continuance.

Defendants' second contention is that the trial court erred in entering judgment against Pioneer without first resolving the issue of the court's jurisdiction over Pioneer and without allowing Pioneer to answer the complaint and defend itself. Thilman maintains that judgment against Pioneer was proper because Pioneer received notice, appeared and participated in the trial.

■ Any action taken by a litigant which recognizes the cause as being in court will amount to a general appearance unless such action was solely for the purpose of objecting to jurisdiction. *Lord v. Hubert* (1957), 12 Ill. 2d 83, 145 N.E.2d 77; *Greer v. Ludwick* (1968), 100 Ill. App. 2d 27, 241 N.E.2d 4; *Slade v. Bowman* (1977), 49 Ill. App. 3d 242, 364 N.E.2d 922.

■■ Summons was never served on defendant Pioneer. According to the report of proceedings, Pioneer's attorney objected to the court's jurisdiction over Pioneer. The trial court instructed the parties to file memoranda in support of their positions. Thilman complied, but defendant Pioneer did not. Without any orders being entered as to the jurisdictional question, the case was tried. The report of proceedings shows that defendants, through their attorney, made objections and cross-examined the sole witness in the case.

Thus, although defendant Pioneer's attorney initially specially appeared on behalf of Pioneer objecting to the court's jurisdiction, the report of proceedings shows that Pioneer participated in the trial of the case on its merits. This constituted a general appearance by Pioneer. We find that Pioneer was not denied an opportunity to defend itself. The trial court properly exercised *in personam* jurisdiction over Pioneer.

Defendants' third contention is that (a) plaintiff's complaint was defective because plaintiff did not state in separate counts a cause of action against Pioneer and a cause of action against Esposito, and (b) the trial court erred in finding liability against both a corporate principal and its agent on the same set of circumstances. Thilman maintains that (a) because defendants never objected to the complaint in the trial court, no alleged defects can be raised on appeal, and (b) the trial court did not err in finding liability against both Pioneer and Esposito for the reason that both were principals.

■■ It is well established that the failure to challenge defects in a pleading in the trial court waives the error on appeal. (*Hild v. Avland Development Co.* (1977), 46 Ill. App. 3d 173, 360 N.E.2d 785.) All objections to pleadings must be raised by motion. (Ill. Rev. Stat. 1977, ch. 110, par. 45 (1).) Such motion should be made before defendant answers so that any defects in the complaint can be cured before a trial on the merits. Here, no such motion was made. Any error was waived.

■■ Even if we assume, because of Esposito's answer and defendants' post-trial motion, that the claimed error was not waived, the trial court properly found liability against both defendants. The law is clear that where an agent discloses the name of his principal or where the party dealing with the agent knows that the agent is acting as an agent, the agent is not personally liable on the contract unless he so agrees. (*Chicago Title & Trust Co. v. De Lasaux* (1929), 336 Ill. 522, 168 N.E. 640; *Gieseke v. Hardware Dealers Mutual Fire Insurance Co.* (1963), 46 Ill. App. 2d 131, 195 N.E.2d 32; *Dunlop v. McAtee* (1975), 31 Ill. App. 3d 56, 333 N.E.2d 76; *McCorkle v. Weinstein* (1977), 50 Ill. App. 3d 661, 365 N.E.2d 953.) Here, the report of proceedings shows that Esposito "offered to pay $1,664.00 immediately and to repay the remaining $10,000.00 in equal monthly installments of $1,000.00 plus 8% interest beginning September 1,

1975 and to sign notes for the debt owing so as to continue the insurance coverages." Thilman agreed to Esposito's offer and $1,664 was paid immediately. Thus, even though acting as an agent for Pioneer, Esposito also obligated himself as a principal in the agreement with Thilman. We find that the trial court did not err in finding both Esposito and Pioneer liable to Thilman.

Defendants' final contention is that plaintiff failed to prove the allegations of its complaint. Defendants contend that plaintiff did not prove that (1) either defendant purchased Ireland's; (2) either defendant requested insurance coverage prior to August 7, 1975; (3) Oak Brook Bank, as trustee, became the owner of Ireland's or that either defendant was a beneficiary of the trust; (4) either defendant assumed the obligations of the previous owners of Ireland's; or (5) $10,049 of insurance coverage was provided for either defendant.

■■ A complaint for breach of contract must allege and plaintiff must establish the existence of a contract, breach of the contract by defendant, and damages to plaintiff as a consquence. (*Rehwald v. Seelandt* (1967), 90 Ill. App. 2d 89, 232 N.E.2d 58; *Bodewes v. Zuroweste* (1973), 15 Ill. App. 3d 101, 303 N.E.2d 509.) A plaintiff must also allege and establish that he has performed all conditions on his part to be performed. Ill. Rev. Stat. 1977, ch. 110A, par. 133(c).

Here, plaintiff met its burden of proof. Esposito offered to pay Ireland's debt due Thilman in installments and to pay current premiums for renewed policies. Plaintiff agreed to the offer, thereby establishing the existence of a contract. Mr. Thilman testified that the sum of $10,049 represented the total unpaid premiums due Thilman. Esposito subsequently ceased payments as to the past-due debt, as well as of the current premiums, thereby breaching the parties' agreement. Thilman performed its part of the bargain by continuing insurance coverages up until the time when payments ceased.

■■ Further, an objection that there was a variance between the pleadings and proof cannot be raised for the first time on appeal. (*O'Flaherty v. Osborn* (1960), 26 Ill. App. 2d 152, 167 N.E.2d 563; *Schwedler v. Galvan* (1977), 46 Ill. App. 3d 630, 360 N.E.2d 1324.) We find defendants have waived the issue by failing to raise it in the trial court.

■■ Even if the issue were properly before us, we do not agree with defendants that such a variance existed here as to be fatal to plaintiff's cause. "A variance between allegations and proof, in order to be fatal, must be substantial and material." (*De Anguera v. Arreguin* (1968), 92 Ill. App. 2d 381, 384, 234 N.E.2d 808.) The rule is that no variance shall be deemed material unless it misleads the adverse party to his prejudice. (*Stowell v. Satorius* (1952), 413 Ill. 482, 109 N.E.2d 734; *Stevenson v. Meyer* (1957), 10 Ill. 2d 335, 339, 139 N.E.2d 740.) In addition, a party is

not bound to prove matters which are mere surplusage and if the proof does not correspond with such matter, the variance is immaterial. *Chicago West Division Ry. Co. v. Mills* (1882), 105 Ill. 63; *Pennsylvania Co. v. Conlan* (1881), 101 Ill. 93.

Turning first to defendants' contention that there was no proof that either defendant owned Ireland's, we note that even assuming there was no such evidence, plaintiff's proof was not deficient because ownership of the premises was not material to the cause of action, which was based on contract.

Defendants also contend that plaintiff did not prove that either defendant requested insurance coverage prior to August 7, 1975; there is no variance, however, because plaintiff's complaint makes no such allegation. Next, defendants' claim that plaintiff failed to prove that Oak Brook Bank, as trustee, became the owner of Ireland's and that either defendant was a beneficiary of the trust also fails because Esposito did not specifically deny this allegation. It is well established that allegations not specifically denied are deemed admitted. (Ill. Rev. Stat. 1977, ch. 110, par. 40(2).) In addition, this allegation, too, is not material to a cause of action based on contract.

Defendants also argue that there was no proof offered to support the allegation that either defendant assumed the existing obligation for insurance premiums. This contention ignores that Mr. Thilman testified that at the meeting on August 7, 1975, defendant Esposito offered to pay all outstanding obligations and to pay for future policies on a current basis.

Defendants further contend plaintiff did not prove that $10,049 of insurance coverage was provided to either defendant. Mr. Thilman testified that $10,049 represented the total unpaid premiums due plaintiff. ■■ We find no merit in defendants' contention that plaintiff's recovery is barred by the Statute of Frauds. The Statute of Frauds has no application where there has been performance by one of the contracting parties in reliance upon the agreement. (*Grundy County National Bank v. Westfall* (1973), 13 Ill. App. 3d 839, 301 N.E.2d 28.) Plaintiff provided insurance coverage for defendants in reliance upon the agreement between the parties that defendants would make payments toward the outstanding debt of Ireland's prior owners, as well as payments for current insurance coverage and plaintiff would supply insurance coverage for defendants. Because there was substantial performance by plaintiff in reliance upon the agreement, the Statute of Frauds has no application.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.